# BILLINGS *v.* FIELD.

CERTIORARI; PATENTS; APPEAL AND ERROR; JUDICIAL DISCRETION.

1. Although the writ of certiorari may lie to test the jurisdiction of an inferior tribunal where that tribunal has proceeded without jurisdiction, and the record so shows, and its issuance will afford an efficient remedy by summarily ending an expensive and protracted litigation, it will not lie where there is another adequate remedy available (following *Presbyterian Church* v. *District of Columbia*, 34 App. D. C. 600, and *Mark* v. *District of Columbia*, 35 App. D. C. 574) ; nor will it be granted except to accomplish substantial justice (following *District of Columbia* v. *Brooke*, 29 App. D. C. 563, and citing *Degge* v. *Hitchcock*, 35 App. D. C. 218).

2. It is erroneous for the supreme court of the District of Columbia, on the petition of an applicant for a patent who is in interference in the Patent Office with another applicant, in whose favor the Examiner of Interferences has made an award of priority, to issue the writ of certiorari to the Commissioner of Patents, where every question raised by the petition for the writ could have been raised on an appeal by the petitioner from the final decision of the Commissioner in the interference proceeding.

3. Sec. 7 of the act of Congress of February 9, 1893 (27 Stat. at L. 434, chap. 74), creating this court, which gives the court jurisdiction to "affirm, reverse, or modify" on appeal any final order, judgment, or decree of the supreme court of the District, vests this court with jurisdiction to inquire, on an appeal from an order of that court granting the writ of certiorari, whether that court in granting the writ, exercised its discretion in accordance with established rules and precedents governing the exercise of such discretion.

4. In the absence of statutory provision, an appellate court has the right to entertain an appeal from an order granting or refusing the writ of certiorari, in order to determine whether the trial court abused its discretion in granting or withholding the writ.

No. 2210.   Submitted October 11, 1910.   Decided December, 5, 1910.

HEARING on an appeal by the respondent the acting Commissioner of Patents from a judgment of the Supreme Court of the District of Columbia, directing the issuance of the writ of certiorari.                                    *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment of the supreme court of the District of Columbia in a certiorari proceeding quashing a decision of the Commissioner of Patents, which revived a patent application filed by Howard D. Colman, and also quashing an interlocutory decision of the Examiner of Interferences in an interference proceeding between said Colman and the appellee Field, and granting certain incidental relief.

The facts disclosed by the pleadings so far as pertinent to this inquiry, are substantially these:   On October 22d, 1894, said Howard D. Colman filed an application for a patent on a

"machine for drawing-in warp threads." About four years later, on the 23d of June, 1898, appellee Millard F. Field filed an application for a patent "on warp drawing machines." On October 6th, 1902, Colman voluntarily abandoned his application in 1894 in favor of a substitute application filed September 6th, 1902. Progressive action was had by the Patent Office on this substitute application, and on December 6th, 1902, the Examiner allowed 100 and rejected the other 19 of its claims. Nothing further was done by the applicant Colman in the prosecution of this application until January 11th, 1904, which was one year, one month, and five days after the date of the last action thereon by the Patent Office. Upon said January 11th, 1904, however, Colman filed the following petition:

"Your petitioner, Howard D. Colman, represents unto your · Honor that on September 6th, 1902, he filed in the United States Patent Office an application for patent upon an improved machine for drawing-in warp threads, which application on December 7, 1903, became abandoned for failure to prosecute by formal amendment.

"Your petitioner further represents that such failure to amend said application was wholly accidental and unintentional, and was not for the purpose of delay.

"Your petitioner further represents that the invention set forth in said application is intricate; that the specification comprises thirty-two typewritten pages of descriptive matter and 119 claims, all but a few of which claims were substantially held allowable on the first Office action; and that the application contains eighteen sheets of drawings, most of which are extremely complex. To reproduce said drawings and refile said application would call for the expenditure of much time and money.

"Wherefore your petitioner humbly prays that said application be revived upon such terms as your Honor shall deem just and equitable."

This petition was supplemented by the affidavit of counsel, as follows:

"Luther L. Miller, being duly sworn upon oath, doth depose

and say that he is an attorney at law and a solicitor of patents; that on or about the 6th day of September, 1902, as attorney for one Howard D. Colman, of Rockford, Illinois, he filed in the United States Patent Office a certain application for patent upon an improved machine for drawing-in warp threads, which application comprised thirty-two pages of descriptive specification, 119 claims, and eighteen sheets of drawings; that said application received Serial No. 122,381, in the Patent Office; that on or about the 6th day of December, 1902, the Examiner having this application in charge acted upon it, and that on or about the 16th day of March, 1903, a personal interview was held by affiant with the Examiner, during the course of which interview an amendment along the lines of the one filed herewith was proposed by said affiant.

"Affiant further states that it is his practice to keep the files of cases pending in the Patent Office which are being conducted by him as attorney in a filing cabinet composed of drawers, and to keep a card index of such pending cases as a check upon said filing cabinet. Affiant further states that on account of the large size of said application No. 122,381 it was not placed in said filing cabinet, but was kept in a separate file box, and in consequence of its absence from the regular filing cabinet the record of said application was inadvertently omitted from said card index.

"Affiant further states that during July and August and a part of September, 1903, he was absent from his office on a European business trip; that since returning to his office he has been busy with other matters in the practice of his profession; and that in a pressure of other business, and in consequence of the absence from said card index of any record of said application, affiant has overlooked the fact that the terms within which amendment should have been made was about to expire and has expired.

"Affiant further states that his said omission to amend said application was not intentional, but was wholly an oversight on his part, and was not and is not for the purpose of delaying the prosecution of said application." Accompanying the petition

and affidavit was a letter, also signed by counsel, in which counsel stated in substance what he had stated in his affidavit. This application for revival was regularly passed upon by the Commissioner, who endorsed thereon, "Petition granted. F. I. Allen, Commissioner." This action was taken in supposed conformity with the provisions of sec. 4894, Rev. Stat. as amended by the act of March 3d, 1897 (29 Stat. at L. 693, chap. 391, U. S. Comp. Stat. 1901, p. 3384), reading as follows:

"All applications for patents shall be completed and prepared for examination within one year after the filing of the application, and in default thereof, or upon failure of the applicant to prosecute the same within one year after any action therein, of which notice shall have been given to the applicant, they shall be regarded as abandoned by the parties thereto, unless it be shown to the satisfaction of the Commissioner of Patents that such delay was unavoidable."

Following the action of the Commissioner in reviving the application the usual procedure was followed until May 28th, 1906, when the application was voluntarily abandoned in favor of a third application for the same invention, filed on May 18th, 1906. That application is now pending in the Patent Office.

On October 9th, 1906, the then pending applications of Colman and Field, having progressed to the point of allowance, were placed in interference. Upon the opening of the preliminary statement of each, it was discovered that the date of conception of the invention alleged by Field was later than the date of the filing in the Patent Office of Colman's application of October 22d, 1894. Thereupon, in pursuance of a rule of the Patent Office, the Examiner of Interferences required Field to show cause why judgment on the record should not be rendered against him. In response to this order Field filed various motions, including a motion to shift the burden of proof. No effort was made by Field, for more than three years after the declaration of interference between Colman's application and his own, to undo the action of Commissioner Allen in reinstating the earlier application of Colman, except to file said motion before the Examiner of Interferences to shift the burden of

proof.  The Examiner of Interferences was without authority to overrule a decision of the Commissioner, and hence a review of said decision reviving said Colman application could have been had in the Patent Office before the Commissioner only. This Field must have known.  On February 18th, 1910, more than three years after the declaration of interference as above noted which period had been consumed by motions of a dilatory nature, Field filed a petition addressed to the Commissioner of Patents praying the Commissioner to "reconsider and reexamine the matter of the revival of the Colman second application as aforesaid," and "to vacate and reverse the order of revival heretofore made," and "on the basis of the vacation and cancelation of such order of revival, instruct the Examiner of Interferences that the burden of proof should be shifted, and Colman be made the junior party on the basis of the filing date of his third application."  After due consideration this petition, on May 31st, 1910, was dismissed by the Commissioner.

On June 4th, 1910, *no evidence having been submitted by Field to overcome Colman's filing date,* the Examiner of Interferences rendered his decision adjudging priority of invention to Colman.

Following said decision by the Examiner of Interferences awarding priority of invention to Colman, Field, on June 15th, 1910, filed a petition for certiorari in the supreme court of the District of Columbia.  In said petition it is stated that, unless the action of the Commissioner in reviving said application is reviewed by certiorari, "your petitioner will be forced to go through a long, protracted, and inconclusive course of proceedings upon the question of priority of invention upon the present record before the Examiner of Interferences, the Board of Examiners in Chief, the Commissioner of Patents, and possibly before the court of appeals of the District of Columbia, before he can review the action of the Commissioner on the question of the revival of said Colman application by a bill in equity;" that the court, "by the granting of its writ of certiorari, may speedily, and without delay and without circumlocution, review the validity of the action of the Commissioner

in the premises on said question of revival of the said Colman application." After praying the issuance of a writ to bring up the record of said interference proceeding, including the record of the revival of said Colman application, the petition closes with a prayer that the court "will enter an order quashing said order of revival, and quashing the said judgment of said respondent acting as Commissioner, refusing as aforesaid to vacate the said order of revival," and that the proceedings in said interference be stayed until the final determination of the petition. Neither Colman nor his assignee was made a party to this petition, but counsel for Colman formally appeared at all stages of the proceeding and participated therein. After hearing, the court entered judgment quashing said decision of the Examiner of Interferences on the question of priority of invention, and quashing said order of revivor, and directing that said interference proceeding "be proceeded with according to law," and that Field be made senior party and Colman junior party in said proceeding. From that judgment the respondent appealed.

*Mr. Webster S. Ruckman,* with whom also appeared *Mr. L. S. Bacon, Mr. A. S. Worthington,* and *Mr. Lincoln B. Smith,* for the appellant.

*Mr. William G. Johnson, Mr. Melville Church, Mr. Thomas B. Booth,* and *Mr. Frederick L. Emery* for the appellees.

Mr. Justice ROBB delivered the opinion of the Court:

Because of the view we take on a vital point in this case, we deem it unnecessary to consider various preliminary questions, and shall assume, without deciding, that in a proper case jurisdiction to issue a writ of certiorari to the Patent Office exists. In many jurisdictions the common-law writ of certiorari has been supplanted by a statutory writ of review, but that has not been done here. The function and scope of the writ in the District of Columbia were carefully and clearly stated by Mr.

Chief Justice Shepard in *Degge* v. *Hitchcock,* 35 App. D. C. 218. In the case of *Re Tampa Suburban R. Co.* 168 U. S. 583, 42 L. ed. 589, 18 Sup. Ct. Rep. 177, the general rule governing the issuance of the writ is stated to be that the "writ will be granted or denied, *in the sound discretion of the court,* on special cause or ground shown; and *will be refused where there is a plain and equally adequate remedy by appeal or otherwise."*

The theory upon which the writ is sometimes issued to test the question of jurisdiction, notwithstanding a remedy by appeal or writ of error exists, is that when the tribunal whose action is sought to be reviewed has proceeded without jurisdiction, and that fact appears upon the face of the record, the issuance of the writ affords a more efficient remedy if it summarily ends an expensive and protracted litigation. *Harris* v. *Barber,* 129 U. S. 366, 32 L. ed. 697, 9 Sup. Ct. Rep. 314; *Gaither* v. *Watkins,* 66 Md. 576, 8 Atl. 464. If, however, there is another adequate remedy available, the writ will not be granted. *Presbyterian Church* v. *District of Columbia,* 34 App. D. C. 600; *Mark* v. *District of Columbia,* 35 App. D. C. 574. Nor will the writ be granted unless to accomplish substantial justice. *District of Columbia* v. *Brooke,* 29 App. D. C. 563.

Without expressing any opinion as to whether Field was guilty of laches in filing his petition for the writ, we proceed to inquire whether, when Field prayed the issuance of the writ of certiorari, an equally adequate remedy by appeal was open to him.

In the act of Feb. 9, 1893 (27 Stat. at L. 434, chap. 74, U. S. Comp. Stat. 1901, p. 3391), creating this court, the jurisdiction of the general term of the supreme court of the District over appeals from the Commissioner of Patents was transferred to this court, and it was further provided that "any party aggrieved by a decision of the Commissioner of Patents in an interference case may appeal therefrom to said court of appeals."

When, therefore, judgment on the record was entered in favor of Colman and against Field by the Examiner of Interferences, a right of appeal through the Board of Examiners in Chief and the Commissioner to this court existed. Judgment would have

been entered as a matter of course by the Examiners in Chief and the Commissioner in turn, and the appeal to this court would not have involved, as alleged by Field in his petition for the writ, "a long, protracted, and inconclusive course of proceedings." Had he pursued the course prescribed by the statute, instead of resorting to this extraordinary remedy, he would have reached this court—the court especially clothed by law with jurisdiction over such appeals—quite as soon as he now has; and inasmuch as the judgment appealed from would have been a final judgment, every question raised by his petition for certiorari could have been raised by appeal. Moreover, it is quite evident that even if we should affirm this judgment of the trial court, the real issue involved in the interference case, namely the question of priority of invention, would still be undetermined. It would still be necessary for the various tribunals of the Patent Office to consider and to determine that question, and from their ultimate judgment an appeal would lie to this court. This situation demonstrates the futility of interference, by a court having no general jurisdiction or control over the affairs of the Patent Office, with the regular and orderly trial of cases in that office, when the very questions raised in that court may be quite as expeditiously raised by appeal. Such a practice, if established, would still further complicate rather than simplify patent practice, and we feel sure, add to the burdens of applicants, and delay instead of expediate final action.

But, it is insisted, the discretion exercised by the trial court is not reviewable, and therefore its judgment will not be disturbed by an appellate tribunal except for errors in the determination of the questions arising upon the record. This court, in sec. 7 of the act of its creation (27 Stat. at L. 434, chap. 74), was expressly given jurisdiction to "affirm, reverse, or modify," on appeal, any final order, judgment or decree of the supreme court of the District. This provision surely clothes this court with authority to inquire whether the trial court has exercised its discretion in accordance with established rules and precedents governing the exercise of such discretion. The court so

ruled in *Trustees of Schools* v. *School Directors,* 88 Ill. 100, an ..pposite case.   The discretionary power exercised by the trial court in passing upon an application for the writ being neither absolute nor arbitrary, the general rule, even in the absence of statutory provision, is that the appellate court will inquire whether there has been a departure from settled principles in the granting or withholding of the writ, to the injury of one of the parties.   *Board of Supervisors* v. *Magoon,* 109 Ill. 142; *McDowell* v. *Keller,* 1 Heisk. 449; *Welch* v. *County Ct.* 29 W. Va. 63, 1 S. E. 337.   It has been held, notably by the courts of New York, that except for a gross abuse of discretion the appellate court will not question the discretionary power of the trial court in granting or withholding the writ.   We think, however, the better rule to be, as above indicated, that the appellate court, except in a plain case, will inquire whether there was a sound exercise of discretion by the trial court.   We think that when it clearly appears, as in this case, that there was an equally efficient remedy by appeal open to the petitioner for the writ, it necessarily follows that there was lacking a fundamental requisite for the award of this extraordinary remedy, and that it therefore becomes the duty of the appellate court to refer the parties to the mode of redress prescribed by statute.   We are convinced in this case that had the learned trial justice been properly enlightened as to the complicated practice in the Patent Office and the results that would inevitably flow from the granting of this writ, he would have withheld it.   The statute has conferred jurisdiction upon this court to hear and determine appeals from the Patent Office.   The only excuse, therefore, for invoking this common-law remedy is that relief by appeal will be less efficient.   We are fully convinced that an appeal will afford fully as speedy and adequate redress as will be accomplished by certiorari.   If proceedings in the Patent Office are to be interrupted by certiorari when there is an equally adequate remedy by appeal, it is clear that an additional tribunal not contemplated by the statute, namely, the supreme court of the District, will be interposed between the tribunals of the Patent Office and this court.   In other words, instead of appeals

coming direct to this court, an aggrieved person, by resorting to the writ of certiorari, will be enabled to prolong the contest by first taking the case to the supreme court. If such a practice should obtain, appeals in every instance would probably be prosecuted from that court to this, as otherwise when parties were sent back to the Patent Office they might find some important, if not controlling, question finally settled in the certiorari proceeding by a court having no general jurisdiction over questions arising in the Patent Office.

It appearing that an equally efficient remedy by appeal was open to appellee when he filed his petition for the writ of certiorari, the trial court should have dismissed his petition. The judgment will therefore be revised, with costs, and the cause remanded for further proceedings.          *Reversed.*